UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-22591-Civ-COOKE/TORRES

LOLA STYLE, INC., a Florida
corporation,

    Plaintiff,

v.

U.S.A. DAWGS, INC.,

    Defendant.

_____/

**DEFENDANT/COUNTER-PLAINTIFF U.S.A. DAWGS, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS
COUNT V OF DEFENDANT'S COUNTERCLAIMS**

Defendant/Counter-Plaintiff, U.S.A. DAWGS, INC., , files its Memorandum of Law in Opposition to Plaintiff/Counterdefendant Lola Style, Inc.'s Motion to Dismiss Count V ("FDUTPA claim") of USA Dawgs' Counterclaims, and states:

**INTRODUCTION**

Before addressing the merits of Plaintiff's argument, we believe it may be helpful for the Court to understand U.S.A. Dawgs' underlying position concerning this case. We therefore provide the following brief background:

This action primarily deals with patent infringement claims being cross-asserted between Plaintiff (asserting a utility patent relating to sandals) and Defendant (asserting a design patent for sandals). While there are new innovations in the aesthetic and ornamental look of sandals, flip-flops and other fashion footwear, and thus good reason for the issuance

1

of design patents like U.S.A. Dawgs',[1] the same cannot be said concerning footwear technology. Truly novel, inventive breakthroughs on how sandals <u>function</u> are, at best, uncommon.[2]

Plaintiff touts the flexibility of the footwear she "invented." But even prehistoric sandals were flexible, being made of fibrous grasses, leather, and similar materials (for purposes of comfort, durability, and other practical concerns) and as prehistoric peoples tended to be mobile, or nomadic, and housing and closet space, such as it was, was generally at a premium, their sandals also needed to be flexible for efficiency of storage and ease of transport.[3] Thus, even though utility patents may properly issue for inventions relating to flexible footwear that can be stored in a reduced space,[4] this field of art is extremely mature and crowded with readily-identifiable prior art.

Furthermore, as this Court well knows, the United States Patent Office (PTO) does not issue patents for abstract ideas, or marketing strategies, or to support the enthusiastic business plans of nascent entrants into the footwear market to use as a sword against sellers and other industry participants.[5]

---

[1] *See* Ex. 7 to D.E. 13 (Def's Sept. 1, 2015 Answer and Counterclaims) (Mann U.S. Pat. No. D655,898) (design patent on specific non-functional, ornamental "look" for sandals).
[2] *See* D.E. 13 at 4-7.
[3] *See id.*
[4] *See, e.g., id.* at 4-5 (figure from 1966 patent publication depicting folded sandal with heel), Ex. 1-4 (patents relating to collapsible, or foldable, footwear).
[5] *Compare* 35 U.S.C. § 101; *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2354-57 (June 19, 2014); *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1576-77 (Fed. Cir. 1990) (patents not to be sought or asserted "as a sword to eviscerate competition unfairly") *with* D.E. 19 at 2-3 (Pl's Mot. to Dismiss FDUTPA claim) ("LSI was the first to pioneer [sic] the women's collapsible footwear industry in 2004 with its founder's patent application for both the foldable ballet flats [sic] and sandals. . . . Since 2012, LSI has not

With this background in mind, Plaintiff asserts, rather dubiously, that she was the first ever to conceive of the idea and to reduce to practice a sandal flexible enough to store in a space-saving manner. But Plaintiff and her attorneys failed to file an Information Disclosure Statement (IDS), as required by law, with the PTO, and thus they cited no related and/or prior art whatsoever.[6] They apparently *de facto* contend that no other previous footwear *ever* materially related to a sandal flexible enough to store in a space-reducing manner.[7]

In its Answer and Counterclaims filed on September 21, 2015, USA Dawgs' presented five counterclaims, including (1) patent infringement of U.S. Patent No. D655,898 (invented by Steven Mann) ("the Mann design patent"); (2) declaratory judgment for non-infringement of the '327 utility patent (asserted by Plaintiff in its complaint); (3) declaratory judgment of the invalidity of the '327 utility patent; (4) declaratory judgment of the unenforceability of the '327 utility patent; and (5) violation of the Florida deceptive and unfair trade practices act, Fla. Stat. § 501.204 *et seq.* (the FDUTPA Counterclaim). Plaintiff's Motion, directed only at Count 5, should be dismissed.

---

manufactured or produced its folding sandals and has only granted licensing of the '327 Utility Patent.").

[6] *See* D.E. 13 at 7.

[7] As sandals (and most footwear), by their very nature, must afford at least some flexibility, this presents a curious and notable instance where the purported "inventor" was likely <u>wearing material prior art</u> when the decision was made to file a patent application claiming flexible footwear and also when the decision was made not to file an IDS (perhaps providing identification and reference to the very shoes being worn).

## USA DAWGS' FDUTPA COUNTERCLAIM PLAINLY STATES A CLAIM

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a complaint must simply contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[8] Courts do "not require heightened fact pleading of specifics," just that complainants "nudge their claims across the line from conceivable to plausible."[9]

USA Dawgs readily satisfies that standard. In its FDUTPA Counterclaim, USA Dawgs alleges that Plaintiff "knew or should have known that its patent was obtained as a result of fraudulent statement[s] and/or intentional and <u>material omissions</u> in the prosecution of the '327 patent and that but for these actions the patent-in-suit would not have issued."[10]

USA Dawgs also alleges that Plaintiff "intentionally, knowingly and in bad faith pursued litigation regarding the '327 patent, including patent infringement actions in this district,"[11] that these practices "occurred in the course of Lola Style's business,"[12] that these practices "misled and deceived consumers throughout the United States, including consumers in Florida"[13] and, as a proximate result, USA Dawgs sustained actual damages.[14] By the standards of *Twombly*, *Iqbal*, and their progeny, these allegations set forth a plausible FDUTPA Counterclaim.

---

[8] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also, e.g., Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1287-90 (11th Cir. 2010) (examining and applying "new pleading standard" of *Twombly* and *Iqbal*).
[9] *Twombly*, 550 U.S. at 570.
[10] D.E. 13 at ¶ 23 (emphasis in original); *see also, e.g., id.* at 7-8, Ex. 8-14.
[11] *Id.* at ¶ 24.
[12] *Id.* at ¶ 25.
[13] *Id.* at ¶ 26.
[14] *See id.* at ¶ 27.

4

Plaintiff's arguments misstate the pleading standards under *Twombly* and *Iqbal* and appear to advocate for a heightened pleading standard. Plaintiff's arguments suggest not that USA Dawgs be required to plausibly state a claim, but rather that USA Dawgs, at the outset and prior to discovery, actually prove its claim of inequitable conduct before the PTO.[15] This argument is simply not supportable.

Indeed, Plaintiff's advocation for a heightened pleading standard under FDUTPA has been explicitly rejected in this district:

> Because FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts like fraud, "the plaintiff need not prove the elements of fraud to sustain an action under the statute." Accordingly, the heightened pleading requirements of Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims.

*Guerrero v Target Corp.*, 889 F.Supp.2d 1348, 1352-55 (S.D. Fla. 2012) (quoting *Galstadi v. Sunvest Comtys. USA, LLC*, 637 F.Supp.2d 1045, 1056 (S.D. Fla. 2009); *see also, e.g., Hackett & Assoc., Inc. v. GE Capital Information Tech. Solutions, Inc.,* 744 F.Supp.2d 1305, 1311-14 (S.D. Fla. 2010) ("The proper pleading standard for a FDUTPA claim is Rule 8(a) . . . . Plaintiff has pleaded a sufficient claim against [Defendant] for violation of the FDUTPA under the pleading standards of Rule 8 and current law").

We note that even in the Federal Circuit inequitable conduct cases Plaintiff relies heavily upon for a misapplied "heightened pleading" standard, "'knowledge' and 'intent' [to deceive the PTO] may be averred generally." *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575

---

[15] *See* D.E. 19 at 5-6 ("Additionally, 'the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO.' This heightened pleading standard was specifically adopted because the routine use of the inequitable conduct doctrine [before the Federal Circuit] 'has plagued not only the courts but also the entire patent system.'") (quoting *Therasense, Inc. v. Becton, Dickinson and Co.,* 649 F.3d 1276, 1289-90) (*Therasense* examining requirements to properly prevail on inequitable conduct claims *at trial*).

F.3d 1312, 1328 (Fed. Cir. 2009); *Hollander v. Ranbaxy Laboratories, Inc.*, Civ. Act. No. 10-793, 2011 WL 248449, at *7 (E.D. Pa. Jan. 24, 2011) ("*Exergen* then noted the [inequitable conduct] claim includes two conditions of the mind, knowledge and intent, which need only be pled generally, i.e. with 'sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.'") (quoting *Exergen*). The remaining "inequitable conduct" elements, if the Court considers them now, are factually supported by the allegations that Plaintiff as "inventor" and her representatives had a legal duty, but deliberately decided not to file an IDS.

In sum, USA Dawgs has properly articulated the factual basis for its FDUTPA claim and the Motion to Dismiss should be denied. In the event that the Court grants the Motion, USA Dawgs requests an opportunity to amend its affirmative defenses and counterclaims.

WHEREFORE, USA Dawgs requests that the Court deny Plaintiff's Motion to Dismiss its FDUTPA Counterclaim.

DATED this 8th day of October, 2015.

Respectfully submitted,

/s/ Matthew S. Nelles
Matthew S. Nelles
Florida Bar No.009245
E-mail: mnelles@broadandcassel.com

BROAD AND CASSEL
One Financial Plaza, Suite 2700
Fort Lauderdale, Florida  33394
Telephone: (954) 764-7060
Fax:  (954) 761-8135

Brian J. Elliott, Esq.
admitted *pro hac vice*
E-mail: brian.elliott@usadawgs.com
Greg Gibbs, Esq.
admitted *pro hac vice*

6

E-mail: greg.gibbs@usadawgs.com
USA Dawgs, Inc.
4120 W. Windmill Ln Unit 106
Las Vegas, NV 89139
Telephone: (702) 260-1060
Facsimile: (702) 260-1606

*Attorneys for Defendant USA Dawgs, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 8, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel/parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ *Matthew S. Nelles*
Matthew S. Nelles

## SERVICE LIST

UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION--CASE NO. 15-22591-Civ-COOKE/TORRES
LOLA STYLE, INC., a Florida corporation, Plaintiff, vs. U.S.A. DAWGS, INC., Defendant.

| Attorneys for Plaintiff | Attorneys for Defendant |
|---|---|
| Jason Bravo, Esq.<br>Florida Bar No. 085743<br>E-mail: jbravo@thebravolawfirm.com<br>The Bravo Law Firm, PLLC<br>4201 S.W. 85th Ave<br>Miami, Florida  33155<br>Telephone:  (305) 335-0709<br><br>Christopher J. Van Dam, Esq.<br>Florida Bar No. 545171<br>E-Mail: Chris@vandamlaw.com<br>Christopher J. Van Dam, PA<br>7855 NW 12 St. #202<br>Miami, Florida 33126<br>Telephone: (305) 446-5200<br>Facsimile: (866) 233-2983 | Brian J. Elliott, Esq.<br>Admitted pro hac vice<br>E-mail: brian.elliott@usadawgs.com<br>Greg Gibbs, Esq.<br>Admitted pro hac vice<br>E-mail: greg.gibbs@usadawgs.com<br>USA Dawgs, Inc.<br>4120 W. Windmill Ln Unit 106<br>Las Vegas, Nevada 89139<br>Telephone: (702) 260-1060<br>Facsimile: (702) 260-1606<br><br>Matthew S. Nelles, Esq.<br>Florida Bar No. 009245<br>E-mail: mnelles@broadandcassel.com<br>Christopher M. Horton, Esq.<br>Florida Bar No. 91161<br>E-mail:  chorton@broadandcassel.com<br>BROAD AND CASSEL<br>One Financial Plaza, Suite 2700<br>100 S.E. 3rd Avenue<br>Fort Lauderdale, Florida  33394<br>Telephone: (954) 764-7060<br>Facsimile:  (954) 713-0987 |